**Entered on Docket**
**January 06, 2014**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA



The following constitutes the order of the court.
Signed January 3, 2014

_____
William J. Lafferty, III
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

In re                                    No. 09-42851
                                         Chapter 13
KATHLEEN DIANE ROBB,

            Debtor.
_____/

**MEMORANDUM DECISION AFTER HEARING ON APPLICATION FOR
COMPENSATION BY ATTORNEY FOR DEBTOR–SUPPLEMENTAL**

The Application for Compensation By Attorney for Debtor–Supplemental (the "Supplemental Application") came for hearing on December 12, 2013. Cathleen Cooper Moran appeared for Moran Law Group, Inc. as applicant ("Applicant"). Nima Ghazvini appeared on behalf of Martha G. Bronitsky, the duly-appointed Chapter 13 Trustee in this division (the

'Trustee'), who filed an Amended Opposition to Application for Compensation By Attorney for Debtor (the "Opposition'). At the conclusion of the hearing, the court took the matter under submission. After considering the Supplemental Application, the Opposition, various other pleadings and documents filed in this case, of which the court may take judicial notice pursuant to Federal Rule of Evidence 201[1], and the arguments of counsel at the hearing, the court will grant the Supplemental Application, for the reasons set forth below.

As background, this is a chapter 13 case filed by a single debtor on April 7, 2009 (See Docket, #1). Also on April 7, 2009, pursuant to 11 U.S.C. Section 329(a) and Federal Rule of Bankruptcy Procedure 2016(b), Applicant filed its "Disclosure of Compensation of Attorney for Debtor" (Docket #9) (the "Rule 2016(b) Statement"). The Rule 2016(b) Statement indicates that Applicant received the sum of $787.50 for "pre bankruptcy and consultation and planning issues [sic]", that Applicant had agreed to accept $4800 for "legal services for fling [sic] a Chapter 13 case", and that $1500 of the agreed-upon fee of $4800 had been received from the debtor pre-petition, leaving $3300 as the "Balance due", to be paid "[t]hrough the Chapter 13 Plan" (Rule 2016(b) Statement, paragraph 3). Paragraph 5 of the Rule 2016(b) Statement states "In return for the above-disclosed fee, I have agreed to render service for all aspects of the bankruptcy case, including: a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy; b. Preparation and filing of any petition, schedules, statement of affairs and plan which may be required; c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings

---

[1] The Opposition requested that the court take judicial notice of "its own records" in this case (Opposition at 1), which the court will interpret as requesting that the court take notice of materials duly filed and available on the docket of this case.

thereof;"[2].

On the same date, Applicant also filed the "Rights and Responsibilities of Chapter 13 Debtors and Their Attorneys" ("Rights and Responsibilities Agreement"), signed by Applicant and the debtor (Docket, #7). The Rights and Responsibilities Agreement, which is in form consistent with the form as revised effective February 24, 2009, and promulgated by the United States Bankruptcy Court for this Division of the Northern District, sets forth a litany of post-filing services that Applicant agreed to provide, including:

> 3. Prepare, file and serve necessary modifications to the plan which may include suspending, lowering or increasing plan payments . . .
>
> 4. Prepare, file and serve necessary amended statements and schedules, in accordance with information provided by the debtor . . .
>
> 6. Object to improper or invalid claims, if necessary, based upon documentation provided by the debtor . . .
>
> 9. Provide such other legal services as are necessary for the administration of the present case before the Bankruptcy Court.

The Rights and Responsibilities Agreement further provides;

> Initial fees charges [sic] in this case are $4800. If the initial fees ordered by the court are not sufficient to compensate the attorney for the legal services rendered in the case, the attorney further agrees to apply to the court for any additional fees. Fees shall be paid through the plan unless otherwise ordered. The attorney may not receive fees directly from the debtor other than the initial retainer.

In August 2013, the "Rights and Responsibilities" in effect in this division were modified by adding language to the second sentence of the paragraph quoted above, which now reads:

---

[2]Although there is no other text contained in paragraph 5 of the Rule 2016(b) Disclosure, the paragraph inexplicably ends with a semicolon.

> If the initial fees ordered by the court are not sufficient to compensate the attorney for the legal services rendered in the case, the attorney further agrees to apply to the court for any additional fees, **with the proviso that any additional fees sought must be substantial and must have been unanticipated at the time the debtor's plan was filed**. (emphasis added).

The debtor's plan was confirmed on June 24, 2009 (Docket, # 24).

During the course of this case Applicant did encounter some unexpected and complex issues related to claims asserted by the Internal Revenue Service ("IRS") and the State of California, including a priority tax claim asserted by the IRS in the amount of $950,000, which were resolved favorably pursuant to Objections to Claims filed by Applicant. Applicant also took steps to value a lien on debtor's real property. Applicant filed and noticed for hearing an Application for Compensation By Attorney for Debtor ("Original Application") (Docket #56), which duly disclosed Applicant's initial fee of $4800, per the Rights and Responsibilities Agreement, and requested an additional $4400 in fees attributable to resolution of the tax claims, and $670 in additional costs. No party in interest filed an objection or opposition to the Original Application, and the Court readily approved the Original Application after a hearing on May 10, 2012. (Docket # 60).

The Supplemental Application seeks additional fees incurred during the period April 21, 2012 through October 31, 2013 in the amount of $3412.50, for essentially three tasks: (1) modifying the debtor's confirmed plan to deal with a late-filed priority tax claim, (2) assisting the debtor in paying the balance of the amounts due under the plan prior to the expiration of sixty months (i.e., modifying the plan to conclude the case "early"), and (3) appearing at the hearing on the Original Application, to the extent that those services exceeded the one hour estimated in the Original Application. Supplemental Application at 2. In addition, Applicant also disclosed that

it anticipated an additional hour's worth of "professional time" and associated postal costs would be incurred in connection with service of an order valuing lien in this case.

The Trustee's Opposition makes two arguments: (1) that the confirmed plan will not fund if the Supplemental Application is granted, and (2) that the additional services are not exceptional and are covered by the Rights and Responsibilities Agreement.

Taking the second objection first, the court sympathizes with the position asserted by the Trustee: the additional services detailed in the Supplemental Application do appear to fall within the parameters of paragraphs "3", "4", "6" and "9", as quoted above, of the Rights and Responsibilities Agreement in effect when this case was commenced, and as executed by the debtor and Applicant, and do not appear to be in any way outside either the scope of services normally expected to be provided by counsel in the course of a chapter 13 case, or the scope of services described in Applicant's Rule 2016(b) Statement.

The court also notes, however, that nothing in the Rights and Responsibilities Agreement filed in this case, or in Applicant's Rule 2016(b) Statement, expressly limited the amount of fees that Applicant might seek in this case, in excess of the initial fee of $4800, even for fees that might appear to be within the scope of services expected to be rendered in a chapter 13 case. Indeed, the only express condition for the award of further fees set forth in the Rights and Responsibilities Agreement was that counsel must separately apply for such fees; and since any such application would be governed by Section 330 of the Bankruptcy Code, any application for fees must demonstrate that the fees are "reasonable compensation for actual and necessary services rendered." 11 U.S.C § 330(a)(1)(A) (2012). The Trustee did not specifically object that the Supplemental Application fails to pass muster generally under the standards set forth in Section 330, and the court believes that the Supplemental Application passes that threshold. The

court therefore approves the Supplemental Application.

The court also wishes to note, however, that the August 2013 amendments to the form of Rights and Responsibilities Agreement, which now require a showing that additional fees sought in excess of the initial flat fee of $4800 are both "substantial" and could not have been anticipated at the time of the filing of the plan, were they in effect at the time of counsel's initial employment, would probably have dictated a different result in this matter.

And, it bears stating that the 2013 amendments did not occur in a vacuum.

As background, the judges in this division are mindful of the fact that the principal benefit of allowing counsel in an individual chapter 13 case to obtain a $4800 fee is that, in most cases, that fee will closely approximate a reasonable fee for the services likely to be rendered in most chapter 13 cases. No doubt, in some cases the fee is generous; in some cases, it might not entirely compensate counsel for every moment spent on a case. In general, therefore, the court believes that the current no look fee adequately and fairly compensates counsel for chapter 13 debtors, on average, for the services likely to be rendered in most chapter 13 cases. And making that fee available on a "no look" basis acknowledges both the fairness and adequacy of that fee, in most cases, as well as the fact that this system spares counsel, the trustee and the court the time and expense of, respectively, filing, reviewing and approving applications for compensation which would, on balance, probably add little if anything to the integrity of the fee award process.

What had concerned the judges of this division, and what led to the amendment of the form of the Rights and Responsibilities Agreement in effect in this division, was the growing practice of counsel accepting the initial fee of $4800, and then billing the debtor and filing additional fee applications for every run-of-the-mill service that happened to have been rendered

after exhaustion of the initial fee. Although the Rights and Responsibilities Agreement did not expressly so provide as originally drafted, it was the court's belief that signing the Rights and Responsibilities Agreement created a compact of sorts between the debtor and counsel that they would work together to achieve the objectives of a chapter 13 case, and that they would, each in their own way, share also a "risk" that the initial fee might, in some cases, be a bit generous, and in others, a bit insufficient, when compared to the fee that would result were the matter to be subject to hourly billing. Certainly, the court did not expect counsel for a chapter 13 debtor voluntarily to refund a portion of the $4800 initial fee as "unearned" in any particular case; nor, in all candor, can it recall a single instance of such conduct. For similar reasons, the court was troubled by a practice of counsel "banking" the initial fee of $4800, and then billing freely for every service rendered thereafter. Unchecked, such a practice would lead to situations in which the initial fee could be expended early in the case, based purely upon an hourly fee assessment, leaving the debtor liable, potentially, to thousands of dollars in additional unexpected fees.[3]

The August 2013 amendments to the Rights and Responsibilities were intended to address exactly this issue. In requiring that any additional fees in excess of the initial $4800 be both substantial and unanticipated at the time of the plan, the court is putting the burden in counsel to assess, at the outset of the case, whether the case is likely to present difficulties or complexities beyond the normal range encountered in a chapter 13 case. Counsel's execution of the Rights and Responsibilities Agreement constitutes a representation that counsel has discussed the case with the debtor, and that counsel has made an initial assessment, in good faith, that the services likely to be rendered in the case are likely to be fairly compensated by the initial fee. To

---

[3]Indeed, review of Applicant's time records in this case reveals that Applicant had expended $4796 in fees, based on Applicant's hourly rates, within roughly the first 60 days of this case, and prior to the occurrence of the initial meeting of creditors.

put it in simple language, if counsel is reasonably concerned at the outset of the case that $4800 will not cover the likely expense of the representation, or counsel is unwilling to bear any risk of additional fees for unexceptional but necessary services that might exceed the amount of the initial fee, counsel should simply not accept the "no look" fee, and should explain to the client (the debtor) the anticipated complexities of the case, as well as counsel's belief that the fees are likely to exceed the $4800 customary initial fee, and the fee application and award process.

The Applicant in this case, and any other counsel reviewing this opinion, should understand that while the court is not limiting the fees awardable to counsel in this case based upon an amendment to the Rights and Responsibilities Agreement made subsequent to the form of Agreement in force at the time of filing this case, the court also believes that the August 2013 amendments changed the "rules" for fee awards in chapter 13 cases considerably--and the Supplemental Application in this case would not fare nearly as well had the amendments to the Rights and Responsibilities Agreement been in effect when this case was commenced.

The Trustee's second objection is that the Supplemental Application, if granted, would result in the failure of the confirmed plan to fund. The court is concerned that this objection is correct as a matter of fact-- indeed, Applicant essentially conceded as much at the hearing.[4] However, the court is not convinced that a failure to have a plan fund as expected, after the award of post-confirmation attorneys fees, constitutes grounds, as a matter of law, to disallow an application for compensation that satisfies the requirements of Section 330 of the Code, and does not run afoul of any then-existing guidelines or procedures--and the court will not disallow

---

[4]Although neither the Trustee nor Applicant specified to the court exactly what amount of additional fees would exceed those that would be payable under the confirmed plan, while also allowing the plan to fund, the court finds that issue moot in the context of this dispute, for the reasons set forth above.

the Supplemental Application on those grounds. However, the court also understands that the Trustee has an obligation to bring such issues to the court's attention, and the court further expects that the Trustee may also feel compelled to seek other relief, including a motion to dismiss this case, because of the resulting failure of the plan to fund. The court will deal with any such motion if and when it is brought.

And in closing the court wishes to express its concern about a colloquy that occurred between the court and Applicant during the discussion of the plan funding issue during the hearing on the Supplemental Application. While acknowledging that the Trustee was correct that award of the fees sought in the Supplemental Application would cause the confirmed plan not to fund, Applicant also stated that the concern was of no consequence, since the debtor had told Applicant that she would pay, after the closing of the case, any fee requested. Counsel's statement is of great concern to the court, as it appears to indicate a profound misunderstanding of the fee award process, and the purpose of the discharge.

First, the form of Rights and Responsibilities Agreement in effect when this case was filed (and not amended to the contrary since) states explicitly: "Fees shall be paid through the plan unless otherwise ordered. The attorney may not receive fees directly from the debtor other than the initial retainer." This language could not possibly be clearer, and prohibits Applicant from accepting fees from the debtor, except as authorized by the court, and through the plan.

Second, there is no doubt whatsoever that having sought fees in this case via an application pursuant to Section 330 of the Code, and having therefore agreed to accept such fees as may be awarded through a confirmed plan, any debt created by such a fee award is discharged by debtor's successful completion of the plan pursuant to Section 1328(a). It would be as

improper for counsel for a chapter 13 debtor to seek payment of a discharged debt as it would be for any creditor to attempt to do so.

It may be that a debtor could decide, post-closing of a chapter 13 case, to pay a debt otherwise discharged. And it may be that such largesse might extend to debtor's former bankruptcy counsel, as well as it might extend to any creditor, and the court may be without power, post-closing, to prohibit such voluntary payments. But the court most certainly can, and will, via an ORDER to be issued concurrently with this Memorandum, direct Applicant to provide a copy of this Memorandum to the debtor, and to discuss with the debtor, directly, the court's rulings and comments contained herein, and the court's concerns that payment of fees to counsel post-closing of this case severely impacts the integrity of a bankruptcy process that has provided, no doubt justly and appropriately, benefits of enormous worth to the debtor.

**END OF MEMORANDUM**

COURT SERVICE LIST

Kathleen Diane Robb
3346 Saddle Dr
Hayward, CA 94541

Cathleen Cooper Moran
Moran Law Group, Inc.
1674 N Shoreline Blvd. #140
Mountain View, CA 94043-1375

Martha G. Bronitsky
P.O. Box 9077
Pleasanton, CA 94566

U.S. Trustee
Office of the U.S. Trustee/Oak
Office of the U.S. Trustee
1301 Clay St. #690N
Oakland, CA 94612